UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE ABLE BODY TEMPORARY          CASE NO. 8:13-bk-6864-CED
SERVICES, INC.
_____/

REGIONS BANK,

    Appellant,

v.                                 CASE NO. 8:14-cv-1631-T-23
                                   (Consolidated)
CHRISTINE L. HERENDEEN, et al.,

    Appellees.
_____/

## **ORDER**

A May 22, 2014 bankruptcy order (Doc. 1-3) approves a settlement agreement that resolves the claims asserted by Angela Welch (the "individual trustee" for the bankruptcy estate of Frank M. Mongelluzzi) and by Christine L. Herendeen (the "corporate trustee" for the bankruptcy estate of several corporate debtors) against Michael D. Traina; MDT Personnel, LLC; MDT Personnel Contracts, LLC; MDT Staffing, LLC, (collectively, MDT); and Disaster Recovery Support, LLC; Labor and Ready Holdings, Inc.; and TrueBlue, Inc., (collectively, TrueBlue).  Regions Bank, a creditor of some of the corporate debtors, appeals (Doc. 9) and argues that the bankruptcy court wrongly approved the settlement without granting Regions

discovery or an evidentiary hearing. Also, Regions argues that the bankruptcy court applied the wrong standard for approval of a sale under 11 U.S.C. § 363.

## BACKGROUND

Mr. Mongelluzzi owned an interest in each of ten entities, which are the corporate debtors, designated as the "Able Body Entities." According to a third-party appraisal, the Able Body Entities had a fair market value of $45,028,000 as of September 2, 2010. In September 2010, Mr. Mongelluzzi sold substantially all the assets of the Able Body Entities[1] to MDT for approximately $46,694,062. As part of the sale, Mr. Mongelluzzi and MDT entered an asset purchase agreement, a transition services agreement, consulting agreements, and a letter agreement. The consulting agreements required Mr. and Mrs. Mongelluzzi to perform consulting services for MDT and required MDT to pay each a $250,000 annual consulting fee. The letter agreement required MDT to pay the Mongelluzzis "fifty percent (50%) of the net sales proceeds resulting from a sale of substantially all of the assets acquired from the Able Body Entities or the equity interests of MDT . . . ." (Doc. 1-9 at 8)

Soon after the sale, Mr. Mongelluzzi and MDT litigated against each other claims arising from the sale. MDT obtained temporary restraining orders in both the bankruptcy court for District of New Jersey and the bankruptcy court for the Eastern District of Pennsylvania. Meanwhile, in October 2010, MDT — alleging that the

---

[1] Theسسsale excluded two of the Able Body Entities — Preferable HQ, LLC, and USL & H Staffing, LLC. However, the asset purchase agreement granted MDT an option to acquire the assets of each.

Mongelluzzis breached — terminated the consulting agreement and the letter agreement.

In February 2013, TrueBlue purchased from MDT assets for $12 million and, subject to a post-closing adjustment, excess working capital for $7 million. Mr. Mongelluzzi alleges that MDT failed to pay fifty percent of the proceeds in violation of the letter agreement.

Mr. Mongelluzzi and the corporate debtors sought bankruptcy protection in the Middle District of Florida in February 2011 and May 2013, respectively. MDT demanded approximately $3.6 million from Mr. Mongelluzzi's bankruptcy estate and approximately $800,000 from some of the corporate debtors' estates.

On May 22, 2014, the bankruptcy court for the Middle District of Florida approved (Doc. 1-3) an agreement that resolves — for $1.7 million in cash and for a waiver by MDT of claims worth approximately $4 million — the claims asserted by Mr. Mongelluzzi and the corporate debtors against MDT and TrueBlue.

## DISCUSSION

Regions argues that the bankruptcy court wrongly approved the settlement without granting Regions discovery, without an evidentiary hearing, and without an independent, fact-based assessment of the soundness and fairness of the proposed settlement. Also, Regions argues that the bankruptcy court applied the wrong standard for approval of the sale under 11 U.S.C. § 363.

**I. Request for an Evidentiary Hearing**

Approval of a settlement agreement is within the informed and reasoned discretion of a bankruptcy court. *In re Chira*, 567 F.3d 1307, 1310 (11th Cir. 2009). Regions argues that the bankruptcy court approved the settlement without an evidentiary hearing and, consequently, without sufficient evidence. Specifically, Regions claims that "the Bankruptcy Court should not have approved the . . . Settlement based upon the dearth of factual record before it because the Trustees failed to meet their burden to produce evidence . . . ." (Doc. 9 at 30)

Under Rule 9019(a), Federal Rules of Bankruptcy Procedure, a bankruptcy court can approve a settlement "[o]n motion by the trustee and after notice and a hearing." However, "an actual evidentiary hearing is not necessarily required." *In re Laing*, 2007 WL 4482263, at *3 (M.D. Fla. Dec. 17, 2007) (Steele, J.); *accord In re Soderstrom*, 477 B.R. 249, 252 (Bankr. M.D. Fla. 2012) (Jennemann, J.) ("A court is not required to decide the merits of each claim or hold a 'mini trial' of the underlying litigation."); *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994) (Gordon, J.) ("It is clear that Rule 9019(a) itself does not expressly obligate the court to hold an evidentiary hearing prior to approving a compromise under Rule 9019(a).").

Before approval of a settlement, the bankruptcy court must determine that the settlement does not "fall below the lowest point in the range of reasonableness." *In re*

*Martin*, 490 F.3d 1272, 1275 (11th Cir. 2007).  Whether a settlement falls within the range of reasonableness depends on:

> (a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990).

On both April 14, 2014, and May 12, 2014, the bankruptcy court held a hearing (Docs. 1-15, 1-20) under Rule 9019(a).  A review of the record, including the trustees' verified motion (Doc. 1-9) to approve the settlement and the supplement (Doc. 1-13) to the motion, confirms that the trustees demonstrated that the settlement is fair and equitable.  *See In re Kay*, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998) (Briskman, J.) ("The Trustee, as proponent of the proposed settlement, has the burden of establishing that the settlement is fair and equitable and should be approved by the Court.").  Further, the bankruptcy court apprised itself of the facts and analyzed the settlement under the *Justice Oaks* factors before approval.

Regarding the first *Justice Oaks* factor — the probability of success in the litigation — the bankruptcy court questioned counsel for the individual trustee about "difficulties that the Trustee anticipates experiencing in the prosecution of [the] case," specifically difficulties as to the letter agreement.  (Doc. 1-15 at 49)  The individual trustee's counsel stated that "one of [the] first hurdles" is establishing that

MDT wrongfully terminated the letter agreement. (Doc. 1-15 at 49) Next, the individual trustee's counsel explained:

> [W]e have issues with whether [the letter agreement] is even a valid contract because of the — we've alleged that there may have been an intent to hinder or delay the creditors. And we thought that . . . was one issue we would have, is money that should have been paid to the entities that would have been available to the junior creditors is now being transformed for perhaps improper motives to a payment being made to [Mr. and Mrs.] Mongelluzzi pursuant to the so-called side-letter agreement.

(Doc. 1-15 at 50) After further questioning by the bankruptcy court, the individual trustee's counsel clarified that these difficulties influence the trustees' assessment of both Mr. Mongelluzzi's and the corporate debtors' abilities to prevail in the litigation. (Doc. 1-15 at 50)

Also, the corporate trustee's counsel presented facts regarding the probability of success in the litigation. As to the difficulties the trustees might encounter in prosecuting the fraudulent transfer claims, the corporate trustee's counsel stated:

> We don't wish to stand here before Your Honor and say the fraudulent transfer claims are not winnable. We do believe, Your Honor, that it is in the best interest of the estates to settle those cases based upon the dollar amount, as set forth in the settlement agreement. . . . Your Honor is very familiar with the difficulty in proving those claims. . . . So in determining whether or not to settle these cases, we looked at all of those issues, all of the documents, and all of the facts surrounding those issues.

(Doc. 1-15 at 55–56) The corporate trustee's counsel also explained that the corporate debtors have "significant claims against numerous solvent targets and [the corporate trustee's counsel] intend[s] to vigorously pursue them." (Doc. 1-15 at 60) Thus, the corporate trustee's counsel concluded that the settlement is the "first step"

to eventually making a "meaningful distribution to creditors" of the corporate debtors' estates. (Doc. 1-15 at 60)

Further, at the May 12, 2014 hearing, the bankruptcy court explained that Michael D. Traina's testimony at a Rule 2004 Examination "regarding the massive fraud that was being perpetrated by Mr. and Mrs. Mongelluzzi . . . does not bode well for success in the litigation on the part of the Trustees in this case." (Doc. 1-20 at 61) Also, the bankruptcy court acknowledged that the individual trustee's counsel estimated the probability of success in the litigation at "[f]ifty-fifty because it's anyone's guess." (Doc. 1-20 at 61)

The second factor — the difficulty of collection — played an insignificant role in the bankruptcy court's analysis. During the April 14, 2014 hearing, the individual trustee's counsel stated that "collectability is probably not an issue with respect to these claims." (Doc. 1-15 at 39) Also, the bankruptcy court explained that "there's security for the payment of the debt."[2] (Doc. 1-15 at 58)

The bankruptcy court gave the "most weight" to the third factor — the complexity, expense, inconvenience, and delay of the litigation. (Doc. 1-20 at 59) At the April 14, 2014 hearing, the bankruptcy court concluded that "it could easily be three, four years, or even longer before the case gets resolved . . . ." (Doc. 1-15 at 101). Further, at the May 12, 2014 hearing the bankruptcy court explained:

---

[2] The bankruptcy court rejected the trustees' first proposed settlement, which included an assignment of accounts receivable, due to uncertainty as to the value and collectability of the settlement. (Doc. 1-15 at 57–58)

> This case will be a very expensive to try. There are a number of
> moving parts. There are a lot of issues. As I mentioned in the last
> hearing, Mr. and Mrs. Mongelluzzi are likely to be primary witnesses.
> Mr. Mongelluzzi is presently in very poor health, as evidenced by
> some of his recent court appearances before the Court and on the
> telephone. It was obvious that he is not — that he is not feeling well.
> Mr. Steen now advises that they live out of state.

(Doc. 1-20 at 59)

In analyzing the fourth factor — the paramount interest of the creditors and a proper deference to their reasonable views — the bankruptcy court emphasized that Regions is the only creditor objecting to the settlement.  (Doc. 1-20 at 59)  Also, the bankruptcy court explained that "Regions had its own fraudulent transfer lawsuit pending in Pinellas County since 2010."  (Doc. 1-20 at 59)  The trustees argue that Regions' action in Pinellas County against MDT Personnel, LLC, centered on "the very same facts and issues which were the subject of the [settlement]."  (Doc. 12 at 11)  The bankruptcy court determined, "If Regions had wanted to push the issue, Regions would have pushed the issue."  (Doc. 1-20 at 59)

Concluding the analysis, the bankruptcy court stated, "So when I look at the *Justice Oaks* factors, I think that it's clear that giving proper and appropriate deference to the business judgment of the Trustees, that this is a settlement that needs to be approved."  (Doc. 1-20 at 61)  A bankruptcy court is "entitled to give the trustee's judgment some deference." *In re Air Safety Int'l, L.C.*, 336 B.R. 843, 859 (S.D. Fla. 2005) (Gold, J.).  The bankruptcy court noted that the parties in this action include "two independent Chapter 7 Trustees represented by capable counsel" (Doc. 1-20

at 60) who "have been busy mediating" (Doc. 1-15 at 78) these issues for almost two years. The bankruptcy court emphasized that "these issues have been percolating for a long, long time." (Doc. 1-15 at 79)[3]

## II.  Request for Discovery

Regions argues that the bankruptcy court wrongly approved the settlement without granting Regions' request for "a limited period for discovery." (Doc. 9 at 7) However, as the bankruptcy court explained, "there's been plenty of time to flesh out these issues in the nearly two years that settlement discussions have been pending . . . . [I]f Regions wanted permission from [the bankruptcy court] to do discovery, Regions could have pursued those rights more diligently." (Doc. 1-15 at 94)

## III.  Approval of a Sale Under Section 363

Regions argues (Doc. 9 at 31) that the bankruptcy court erred by failing to apply the standard of approval for a sale under 11 U.S.C. § 363, which governs the sale of assets. The parties agree that the settlement includes a sale of assets because the settlement resolves claims owned by a bankrupt estate. (Doc. 9 at 30; Doc. 12 at 25) The bankruptcy court requested extensive briefing from the trustees and an

---

[3] An instructive contrast is *In re Laing*, 2007 WL 4482263, at *3 (M.D. Fla. Dec. 17, 2007), in which the bankruptcy court failed to conduct a hearing under Rule 9019(a) and "no transcript [was] available to ascertain whether the relevant factors were considered on the record." *In re Laing* concludes that "[w]ithout an adequate explanation for the basis of the ruling, the District Court cannot conduct a meaningful review on appeal, and remand is appropriate." 2007 WL 4482263, at *3.

additional hearing to ensure that the sale satisfies 11 U.S.C. § 363(h), which governs the sale of assets held by co-owners.

Before a bankruptcy court approves a settlement that constitutes a sale of assets, the trustee must demonstrate an "articulated business justification or sound business reasons for the proposed sale." *In re Moore*, 608 F.3d 253, 262 (5th Cir. 2010) (Smith, J.); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (Potter, J.); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (Kennedy, J.). The individual trustee's counsel stated that "the letter agreement is an asset of the estate that's owned [by Mr. and Mrs. Mongelluzzi] as tenants by the entirety and there's $84.8 million of joint debt in this case." (Doc. 1-15 at 43) Because the sale of Mr. and Mrs. Mongelluzzi's rights under the letter agreement "is an integral component of the settlement," MDT and, likely, TrueBlue would not proceed with the settlement unless the bankruptcy court approved the terms of the sale. (Doc. 1-15 at 44). The individual trustee's counsel explained that the settlement was "the best deal under the circumstances" and that its approval was necessary to resolve the litigation and to prevent additional administrative expenses. (Doc. 1-15 at 46)

At the April 14, 2014 hearing, Regions, the only creditor that objects to the approval of the settlement, offered to "take up the litigation" and to "bring the claim on behalf" of the trustees. (Doc. 1-15 at 89) However, Regions was "not sure" it could buy the claims for $1.7 million. (Doc. 1-15 at 89) Also, Regions offered no plan to obtain a better sale price. The trustees have no obligation to "pursue a course

of litigation which [they do] not believe will prove fruitful." *In re Vazquez*, 325 B.R. 30, 38 (Bankr. S.D. Fla. 2005) (Utschig, J.).

## CONCLUSION

The bankruptcy court's May 22, 2014 order (Doc. 1-3) is **AFFIRMED**.  The clerk is directed to terminate any pending motion and to close this case.

ORDERED in Tampa, Florida, on February 25, 2015.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE